AES:SCJ
F. #2018R00159

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

HECTOR PEREZ,

             Defendant.

I N F O R M A T I O N

Cr. No. 20-319 (ENV)
(T. 18, U.S.C., §§ 371, 981(a)(1)(C) and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

- - - - - - - - - - - - - - - - - - - - - - - - - - X

THE UNITED STATES ATTORNEY CHARGES:

## INTRODUCTION

At all times relevant to this Information, unless otherwise indicated:

I.    The Defendant and Relevant Entities and Individuals

      1.    The defendant HECTOR PEREZ was a resident of New York, New York. On or about and between approximately October 2013 and June 2015, PEREZ was a registered broker employed at Global Arena Capital Corp. ("Global"), a broker-dealer registered with the United States Securities and Exchange Commission ("SEC") and the Financial Industry Regulatory Authority ("FINRA"), with its principal place of business in New York, New York. On or about June 5, 2015, Global ceased operations.

      2.    Global Owner, an individual whose identity is known to the United States Attorney, controlled Global starting in or about October 2013.

      3.    Broker 1 and Broker 2, individuals whose identities are known to the United States Attorney, were registered brokers employed at Global.

4. In or about July 2015, the defendant HECTOR PEREZ and several other individuals associated with Global, including Global Owner, and several other brokers, including Broker 2, were barred from the securities industry by FINRA, pursuant to consent orders, for conduct that predated their employment at Global. In or about August 2015, Broker 1 was barred from the securities industry by FINRA for failing to appear before FINRA to give testimony.

II. Relevant Regulatory Principles and Definitions

5. A "security" was, among other things, any note, stock, bond, debenture, evidence of indebtedness, investment contract or participation in any profit-sharing agreement.

6. FINRA was a not-for-profit organization authorized by Congress to regulate the broker-dealer industry. Among other things, working under the supervision of the SEC, FINRA wrote and enforced rules governing all registered broker-dealer firms and registered brokers in the United States to protect the investing public. All brokers had to be licensed and registered by FINRA and pass qualification exams.

7. FINRA Rule 3260 provided that no broker was permitted to exercise any discretionary power over a customer's account unless the customer provided prior written authorization permitting such discretionary power. In the absence of written discretionary trading authority, a broker was required to obtain authorization from the customer prior to conducting a transaction in the customer's account.

III. The Fraudulent Scheme

8. In or about and between April 1, 2015 and June 5, 2015, the defendant HECTOR PEREZ, together with others, engaged in a scheme to defraud customers of

Global, including customers residing in the Eastern District of New York, by engaging in unauthorized trading in the customers' accounts.

9. Specifically, the defendant HECTOR PEREZ, together with others, arranged to purchase and sell securities in Global customers' accounts without the customers' prior authorization or knowledge. None of the customers who were defrauded had given Global or its brokers discretionary trading authority over their accounts. The primary purpose of the unauthorized trading by PEREZ and others was to generate income for Global from the commissions and fees charged to the customers' accounts for the unauthorized trades.

10. On or about and between April 1, 2015 and June 4, 2015, the defendant HECTOR PEREZ and Broker 2, together with others, caused approximately 4,500 trades to be executed in approximately 360 customer accounts, most of which were unauthorized. The principal value of these transactions was approximately $106 million and the trades generated over $2.44 million in commissions and fees for Global. Those ill-gotten gains were then distributed to PEREZ, Global Owner, Broker 1, Broker 2 and others. Among other things, PEREZ and Broker 2 were responsible for submitting large numbers of unauthorized trades to be executed on or about and between April 22, 2015 and June 5, 2015, in customer accounts assigned to Broker 1, who left Global on or about April 20, 2015.

## CONSPIRACY TO COMMIT SECURITIES FRAUD

11. The allegations contained in paragraphs one through 10 are realleged and incorporated as if fully set forth in this paragraph.

12. In or about and between April 2015 and June 2015, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendant HECTOR PEREZ, together with others, did knowingly and willfully conspire to use and employ manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (i) employing one or more devices, schemes and artifices to defraud; (ii) making one or more untrue statements of material fact and omitting to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (iii) engaging in one or more acts, practices and courses of business which would and did operate as a fraud and deceit upon one or more customers of Global, in connection with the purchase and sale of equities, directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails, contrary to Title 15, United States Code, Sections 78j(b) and 78ff.

13. In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendant HECTOR PEREZ, together with others, did commit and cause the commission of, among others, the following:

OVERT ACTS

(a) On or about April 22, 2015, Global Owner texted PEREZ, "Stop worrying about ur number do 40g a day. 1.3 a day. Sell everything." PEREZ replied by text on the same day, "Done and done."

(b) On or about April 29, 2015, Broker 2 texted his assistant, "[Global Owner] wants me to make [PEREZ] do 500 a month. I gotta sit with him again. Can you remind me this morning? ... What do you think best way is to make sure [Broker 2's assistant] keeps track of gross on spreadsheet? Can you show her your spreadsheet?"

(c)     On or about May 1, 2015, Broker 2, referring to PEREZ's increased trading activity, texted PEREZ, "Nice job this week bro. Breaking through imaginary limitations." PEREZ responded by text the same day, "Well put. That's what it was. Thank you …"

(d)     On or about May 17, 2015, Broker 2 texted his assistant, "We'll need to sell everything we bought Friday . . . You remember the drill. Hope ur having an awesome Sunday." The assistant responded, "Ok sounds good. I can sell in your rep that won't be a problem." Broker 2 replied, "No problem."

(e)     On or about June 3, 2015, PEREZ caused Global to enter trades for approximately 30 customers of Global, including some customers in the Eastern District of New York, without obtaining prior trading authorization from them.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION

14.     The United States hereby gives notice to the defendant that, upon his conviction of the offense charged herein, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offense to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense.

15.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

      (c)      has been placed beyond the jurisdiction of the court;

      (d)      has been substantially diminished in value; or

      (e)      has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

      (Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

_____
SETH D. DuCHARME
ACTING UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F.#: 2018R00159

FORM DBD-34

JUN. 85

No.

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

HECTOR PEREZ,

Defendant.

# INFORMATION

(T. 18, U.S.C., §§ 371, 981(a)(1)(C), and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

*A true bill.*

\_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_

*Foreperson*

*Filed in open court this* \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ *day,*

*of* \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ *A.D. 20* \_ \_ \_ \_ \_

\_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_

*Clerk*

*Bail, $* \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_

\_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_

*Shannon C. Jones, Assistant U.S. Attorney (718) 254-6379*